[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/06/98
THOMAS K. KAHN
CLERK

_____

No. 97-2576

_____

D. C. Docket No. 93-523-CIV-ORL-18


THOMAS HARRISON PROVENZANO,

                                        Petitioner-Appellant,

versus

HARRY K. SINGLETARY, JR.,
Secretary, Florida Department of
Corrections,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 6, 1998)


Before EDMONDSON, COX and CARNES, Circuit Judges.


CARNES, Circuit Judge:

Thomas H. Provenzano, a Florida death row inmate, appeals from the district court's denial of his 28 U.S.C. § 2254 petition for habeas relief from his murder conviction and death sentence. The facts relevant to the crime and the evidence at trial are set out in the Florida Supreme Court's decision affirming the conviction and sentence on direct appeal. See Provenzano v. State, 497 So. 2d 1177, 1179-85 (Fla. 1986). On April 20, 1987, the Supreme Court denied certiorari, 481 U.S. 1024, 107 S. Ct. 1912, thus ending the direct review process.

Provenzano's initial state collateral relief motion, filed under Florida Rule of Criminal Procedure 3.850, was denied by the state trial court. The Florida Supreme Court affirmed that denial while at the same time denying a state habeas corpus petition, which in Florida is filed directly with the state supreme court. See Provenzano v. Dugger, 561 So. 2d 541 (Fla. 1990). In its opinion denying relief on that occasion, the Florida Supreme Court ordered the state attorney to disclose certain portions of his file to Provenzano, and it granted Provenzano permission to file a second state collateral motion should any Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), claims arise from the disclosed materials. See 561 So. 2d at 549. Some did, but Provenzano's second or

supplemental state collateral motion raising them was denied by the state trial court, and the Florida Supreme Court again affirmed the denial of relief.  See Provenzano v. State, 616 So. 2d 428 (Fla. 1993).

Having run out of state court remedial options, Provenzano filed a 28 U.S.C. § 2254 petition in the district court on June 30, 1993.[1]  That court, like the state collateral courts, saw no need for an evidentiary hearing and concluded that Provenzano was not entitled to any relief.  The district court did issue a detailed opinion thoroughly analyzing each of the many claims Provenzano raised.  See Provenzano v. Singletary, No. 93-523-CIV-ORL-18, 1997 WL 909440 (M.D. Fla. March 3, 1997)(manuscript opinion).  Because the district

---

[1]Provenzano's counsel in the district court, who were attorneys with the Office of Capital Collateral Representative, filed a 335-page habeas petition which included much legal argument and extensive quotations from the record and various documents.  We have previously warned that such a prolix filing, resembling a treatise more than a petition, is not consistent with the requirements of Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Court, and is subject to being struck.  "Attorneys who cannot discipline themselves to write concisely are not effective advocates, and they do a disservice not only to the courts but also to their clients."  Spaziano v. Singletary, 36 F.3d 1028, 1031 n.2 (11th Cir. 1994), cert. denied, 513 U.S. 1115, 115 S. Ct. 911 (1995); accord, Buenoano v. Singletary, 74 F.3d 1078, 1081 n. 1 (11th Cir. 1996) ("The petition in this case reads as if it were both petition and brief. ... This practice, which has become common, is not contemplated either by the habeas rules or the civil rules and makes it difficult for courts to identify discrete claims in a petition.  We expressly disapprove the practice."); Kennedy v. Herring, 54 F.3d 678, 681 - 82 n.1 (11th Cir. 1995) .  In fairness to Provenzano's counsel in this appeal, we note that she was not one of the attorneys who represented him so poorly by filing such a lengthy petition in the district court.

court's treatment of many of the claims leaves us with little or nothing to add, we will rely upon it to dispose of most of the claims Provenzano presses on appeal.

CLAIMS PRESSED ON APPEAL

The claims that Provenzano contends the district court should have granted relief on, or at least should have conducted an evidentiary hearing about, are listed below. In order to facilitate cross-reference to the district court's opinion, we have inserted a parenthetical reference to the number each claim has in that opinion where that number is different from the one used for it in this opinion.

      I.     The Change of Venue Claims
                    (I in the district court opinion)

      II.    Guilt Phase Ineffective Assistance of Counsel    (I - V and IX(1) in the district court opinion)[2]

---

[2]In the district court, among the ineffective assistance issues Provenzano raised were some relating to the separation of the jury between the guilt and sentence stages. He claimed counsel was ineffective for failing to object to the separation instructions as inadequate and for failing to request that the judge question the jurors in depth when they returned for the penalty stage. However, he did not raise in the district court the claim that counsel were ineffective for failing to object to the separation itself. That claim appears for the first time in Provenzano's briefs to this Court. Because he did not raise the claim below, we do not consider it. See, e.g., Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994); Allen v. Alabama, 728 F.2d 1384, 1387 (11th Cir. 1984).

4

III.    Penalty Phase Ineffective Assistance of Counsel (VII and IX in the district court opinion)[3]

IV.     Prosecutorial Misconduct (XII in the district court opinion)

V.      The Ake v. Oklahoma Claim (VII in the district court opinion)

VI.     The Adversarial Testing Claim (VI in the district court opinion)

VII.    The Aggravating Circumstances Claim (XVII in the district court opinion)

VIII.   Competency to Stand Trial (VIII in the district court opinion)

IX.     Ineffective Assistance of Appellate Counsel (XVIII in the district court opinion)

X.      The Mitigating Circumstances Jury Instruction Claim (XV in the district court opinion)

---

[3]Of the guilt stage ineffective assistance claims Provenzano asserted in the district court, see Provenzano v. Singletary, manuscript op. at 9-27, 1997 WL 909440 at *4-*15, he has not argued in this Court the ones relating to: difficulty in securing counsel; waiver of attorney-client privilege regarding the testimony of two State's witnesses; and Provenzano not testifying at the guilt stage. Accordingly, those contentions are waived. See, e.g., Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); Love v. Deal, 5 F.3d 1406, 1407 n.1 (11th Cir. 1993).

XI. The Mitigating Circumstances Findings Claim (XIII in the district court opinion)

XII. The <u>Caldwell v. Mississippi</u> Claim (XIV in the district court opinion)

DISCUSSION

We affirm on the basis of the district court's opinion, without further comment, its denial of relief on the following claims as previously enumerated (using our numbers for the claims, not the numbers used in the district court): Claims II, IV, VI, VIII, IX, X, and XI.

We supplement the district court's discussion of the remaining claims as follows:

The Change of Venue Claims

Provenzano claims that the failure of the trial court to grant a change of venue because of pretrial publicity violated his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. However, it is undisputed that after the trial judge stated he was inclined to grant a change of venue if one were properly requested, defense counsel deliberately chose for strategic reasons not to request that the venue be changed. Accordingly, as the Florida Supreme Court and the district court concluded, the claim that the trial court should have granted a

6

change of venue was procedurally defaulted. See, Provenzano v. State, 497 So.
2d at 1181; Provenzano v. Singletary, manuscript op. at 4-6, 1997 WL 909440
at *2-*4.

The only cause Provenzano put forward for the procedural default is his
related claim that trial counsel was ineffective for failing to move for a change
of venue. Both the Florida Supreme Court, see 561 So. 2d at 544-45, and the
district court, see Provenzano v. Singletary, manuscript op. at 9-10, 1997 WL
909440 at *4-*5, rejected that ineffective assistance claim. We agree with their
reasoning and conclusion that counsel's failure to request a change of venue was
not outside the wide range of reasonable professional assistance, but we add to
their discussion.[4]

---

[4]We note the district court's statement that "it is unlikely that a change of venue would
have been granted since there [were] no undue difficulties in selecting an impartial jury,"
Provenzano v. Singletary, manuscript op. at 9, 1997 WL 909440 at *5, is partially incorrect.
Regardless of whether there were undue difficulties in selecting a jury, the trial judge did
state that he was inclined to grant a change of venue if one was requested. Of course, it is
a different matter whether there is a reasonable probability of a different result had a change
of venue been sought and obtained. We seriously doubt that there is, but we see no reason
to decide that question, which is the prejudice prong of the ineffectiveness inquiry. See
Strickland v. Washington, 466 U.S. 693, 697, 104 S. Ct. 2052, 2069 (1984) (if a petitioner
fails to establish one prong of the ineffectiveness inquiry the court need not reach the other).

Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo. See Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1444, 1462 (11th Cir. 1991); Bundy v. Wainwright, 808 F.2d 1410, 1419 (11th Cir. 1987).

As to the factual component, in this case the Florida Supreme Court found that trial counsel made a deliberate tactical decision not to obtain a change of venue. See Provenzano v. State, 561 So. 2d at 544-45. More specifically, it found the following facts concerning that decision:

> The venue issue came up early in the case when trial counsel stated on the record that he had been advised that any change of venue would involve a trial in St. Augustine and that he preferred the trial to be held in Orlando. He felt that a juror's knowledge of the case would not necessarily be an impediment, since an insanity defense would be presented and he believed an

8

> Orlando jury would be more receptive to such a defense than a more conservative one in St. Augustine.

Id., at 544. It is true that those fact findings were not based upon sworn testimony given at a hearing but were instead drawn from defense counsel's statements on the record when the issue came up at trial. That matters not, because deference is owed to state appellate court findings based upon statements in the trial record even when those statements were not made under oath. See, e.g., Parker v. Dugger, 498 U.S. 308, 320, 111 S. Ct. 731, 739 (1991) (deference must be given to state appellate court's fact finding as to what the trial judge's ambiguous order meant); Wainwright v. Goode, 464 U.S. 78, 85, 104 S. Ct. 378, 382 (1983) (same); King v. Strickland, 714 F.2d 1481, 1489, 1494 (11th Cir. 1983) (state appellate court's finding from the trial record that counsel was prepared to try all the charges on the trial date entitled to presumption of correctness) vacated 467 U.S. 1211, 104 S. Ct. 2651 (1984), reinstated upon remand, 748 F.2d 1462 (11th Cir. 1984).

Provenzano does not contend that his trial counsel's decision to forego a change of venue was not a strategic or tactical one. He concedes as much, saying that: "it is the reasonableness of the tactic or strategy that is the issue, not

9

whether one exists." Provenzano's Reply Brief at 3. Provenzano contends the district court erred in failing to grant him an evidentiary hearing on the reasonableness of his counsel's strategic decision not to request a change of venue. He did not get an evidentiary hearing in state court either. In support of his argument that an evidentiary hearing should have been held, Provenzano points to an affidavit he proffered from Joseph W. DuRocher who had served as Public Defender for Orange County since 1981.[5] DuRocher's affidavit, in its entirety, states as follows:

> 1. My name is Joseph W. DuRocher. I have practiced law in Florida since 1967 and have had extensive experience with the criminal justice system since that time.
>
> 2. I was elected Public Defender of Orange County in 1980 and took office in 1981. Presently, I am serving my third term as Public Defender.
>
> 3. I was familiar with the considerable pretrial publicity in the case of <u>State of Florida v. Thomas Provenzano</u> in 1984. This was a very high profile case,

---

[5]Mr. DuRocher did not represent Provenzano at trial or on appeal, because the entire Orange County Public Defender's Office recused itself. The basis of the recusal was personal knowledge and association with the court officials whom Provenzano shot. Private outside counsel from another county were appointed to represent Provenzano at trial, and a different public defender's office represented him on appeal. An outside prosecutor and judge were also brought in for the trial.

and it received extensive attention from both the written and broadcast news media.

4. In my opinion, this case presented a textbook example of a case in which pretrial publicity had so pervaded the Orlando community that any first-year lawyer would have questioned venue. I was surprised to learn that no motion to change venue was pursued in this case, particularly when the defense was one of insanity.

5. Orlando is a very conservative community. In the more than two decades that I have been involved with the criminal justice system, I have never seen an insanity defense succeed in a capital case in Orlando. In fact, I believe no insanity defense in a capital case has prevailed in over a generation.

6. I am acquainted with Jack Edmund and Dan Brawley, the defense attorneys in the Provenzano case. Neither attorney contacted me for any opinion regarding the issues of venue or insanity.

There are several reasons why this affidavit does not entitle Provenzano to an evidentiary hearing.

First, the affidavit is conspicuous for what it does not say. For example, although it describes Orlando as a very conservative community, it does not negate the possibility that St. Augustine is even more conservative. While the affidavit says that Mr. DuRocher has never seen an insanity defense succeed in

11

a capital case in Orlando, it does not say that one has ever succeeded in St. Augustine either.  As to whether an insanity defense had prevailed in over a generation, insanity was the only defense that Provenzano had after he shot three people in front of a courthouse full of witnesses.  The DuRocher affidavit establishes at most that its author would have sought a change of venue, but when scrutinized it does not actually say even that much.  The affidavit says that "any first-year lawyer would have questioned venue," and that it's author was "surprised to learn that no motion to change venue was pursued in this case," but it does not say that he definitely would have insisted on a change of venue had he been representing Provenzano at trial.

Even if the affidavit had said that its author would have insisted on a change of venue, it would establish only that two attorneys disagreed about trial strategy, which is hardly surprising.  After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984); accord, e.g., Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc) ("Three different defense attorneys might have defended Waters three different

12

ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."). In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice. See, e.g., White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) (defendant must establish "that the approach taken by defense counsel would have been used by no professionally competent counsel"); Harich v. Dugger, 844 F.2d 1464, 1470-71 (11th Cir. 1988) (same). Even if accepted as gospel, the affidavit does not do that.

There is another more fundamental reason why Provenzano is not entitled to an evidentiary hearing on the reasonableness of his counsel's decision to forego a change of venue, regardless of any affidavit he may have proffered. Our Jackson, Horton, and Bundy decisions establish that the reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof. Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to

be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn.

We have no doubt that the Florida courts and the district court were correct in concluding that the strategic choice Provenzano's trial attorney made not to pursue a change of venue was well within the broad boundaries of reasonableness staked out by decisional law in this area. We reached the same decision in Weeks v. Jones, 26 F.3d 1030, 1046 n.13 (11th Cir. 1994), in which the petitioner challenged his trial counsel's decision not to have the case moved from a county in which there had been considerable pretrial publicity, because counsel thought that the petitioner still had the best chance for acquittal in that county. We said, "this is the type of tactical decision that the Supreme Court has recognized that a criminal defendant's counsel may elect as a reasonable choice considering all of the circumstances and has cautioned courts against questioning." Id. The Supreme Court and this Court have said that strategic choices are "virtually unchallengeable." See, e.g., Washington v. Strickland, 466 U.S. at 690, 104 S. Ct. at 2066; Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995).

Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel. See Spaziano v. Singletary, 36 F.3d 1028, 1040 (11th Cir. 1994) ("[T]he more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense without substantial investigation was reasonable under the circumstances.") (quoting Gates v. Zant, 863 F.2d 1492, 1498 (11th Cir. 1989)). At the time of Provenzano's trial, one of his two counsel had tried eighty-seven criminal cases and had been lead counsel in nine capital cases. The other attorney had tried even more criminal cases in general and capital cases in particular, had been practicing twenty years, and had earned the reputation in the Bar and community as a leading criminal defense attorney. Clearly, these two experienced criminal defense attorneys knew what they were doing; their decisions were informed by years of experience with juries in capital and non-capital cases. We will not second guess their considered decision about whether Provenzano stood a better chance, however slim it may have been, with a jury in Orlando than with a jury in St. Augustine. As we said in Spaziano, 36 F.3d at 1039, cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and

15

far between, and cases in which deliberate strategic decisions have been found to constitute ineffective assistance are even fewer and farther between. This is not one of those rare cases.

Effective Assistance of Counsel
at the Penalty Phase

The Florida Supreme Court analyzed and rejected Provenzano's penalty stage ineffective assistance claim, see Provenzano v. State, 561 So. 2d at 545-46, as did the district court, see Provenzano v. Singletary, No. 93-523-CIV-ORL-18, manuscript op. at 31-34, 59-63, 1997 WL 909440 at *18-*19, *32-*35 (M.D. Fla. March 3, 1997). The relevant facts are set out well in those opinions. We add to their discussions the observation that our decision in Waters v. Thomas, 46 F.3d 1506 (11th Cir. 1995) (en banc), is closely on point.

In Waters, as in this case, counsel presented mental state expert witnesses at the guilt stage in support of a not guilty by reason of insanity plea; much of the testimony of those witnesses at the guilt stage was relevant to mitigating circumstances; and counsel chose not to recall them and attempt to elicit

16

additional mitigating circumstance evidence from them at the sentence hearing. See id. at 1512-13. Rejecting the contention that effective assistance required counsel to recall expert witnesses at the penalty stage in such circumstances, we noted in Waters that which witnesses to call "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess," and we held that a reasonable lawyer could decide to leave well enough alone and not subject to another round of cross-examination witnesses from whom he had already obtained during the guilt stage substantial evidence of serious mental problems. See id. at 1512. Exactly the same is true here.

In this case, Provenzano has brought forth a report from another mental state expert indicating that additional mitigating circumstance evidence could have been put before the jury. See id. We noted in Waters that it is "a common practice" to file affidavits from witnesses who say they could have provided additional mitigating circumstance evidence, but "the existence of such affidavits, artfully drafted though they be, usually proves little of significance." See id. at 1513. We reiterated in that decision what we had said more than once before: "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a

sufficient ground to prove ineffectiveness of counsel." Id. at 1514, quoting

Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992); Foster v. Dugger, 823

F.2d 402, 406 (11th Cir. 1987).

In this case, Provenzano's experienced criminal defense attorneys retained

investigators, interviewed myriad witnesses including family members,

examined medical records, and assembled background information about their

client. They forwarded that information to the mental state experts they

obtained. See Provenzano v. Singletary, manuscript op. at 33, 1997 WL 909440

at *19. At trial, they presented two mental state experts, who were well versed

in Provenzano's background and behavior, and who testified to his serious

mental problems, giving their opinion that he was insane at the time of the

crime. See id., manuscript op. at 32-33, 59-61, 1997 WL 909440 at *19, *32-

34. Counsel used that expert testimony skillfully in arguments to the jury at the

penalty stage. See id., manuscript op. at 59-60, 1997 WL 909440 at *32-*34.

Provenzano's counsel also used his sister as a guilt stage witness on the

insanity issue. She testified in depth about her brother's life and problems. At

the penalty stage, counsel called a detective who testified about Provenzano's

paranoid behavior, and also about Provenzano having told officers about

explosives in his apartment because he did not want them to get hurt. They also called Provenzano himself as a witness in his own behalf at penalty stage, and it appears from the record that he testified for about two hours. See Waters v. Zant, 46 F.3d at 1519 (recognizing that skilled defense counsel sometimes put a capital defendant on the stand to "humanize" him, because "it may be more difficult for a jury to condemn to death a man who has sat on the stand a few feet from them, looked them in the eyes, and talked to them."). Provenzano received effective assistance of counsel at the penalty stage.

## The Ake v. Oklahoma Claim

To the district court's discussion of the Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087 (1985), claim, we add that this Circuit's leading decision on Ake, which is Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992) (en banc), forecloses Provenzano's claim that the mental health assistance he received violated the Ake rule. Clisby holds that Ake is a due process doctrine, see 960 F.2d at 928-29, which requires the petitioner in all but the most unusual circumstances to show that he requested from the trial court something in the way of mental health expert assistance that the trial court refused to give him. See id. at 934 ("Petitioner's claim of a due process violation collapses as soon

as one seeks to identify the trial court's ruling that purportedly rendered petitioner's trial fundamentally unfair.") Provenzano was given all that he requested from the trial court in the way of expert witnesses on the mental health issues.

We did speculate in Clisby that under certain limited circumstances due process might require the trial court to intervene to ensure that a defendant receives the assistance of a competent mental health expert, but we held that there was no indication the examination of the psychiatrist in that case was anything less than adequate. See id. at 934 n.12. The mental health experts who examined Provenzano and testified on his behalf at trial were fully competent. Moreover, the assistance they rendered Provenzano, see Provenzano v. Singletary, manuscript op. at 22-23, 32-33, 59-61, 1997 WL 909440 at *12, *19, *32-*34, far exceeded what Clisby held was adequate in that case, see 960 F.2d at 930-33. There was no Ake violation.

### The Aggravating Circumstances Claim

To the district court's discussion of Provenzano's aggravating circumstances claim, see Provenzano v. Singletary, manuscript op. at 70-73, 1997 WL 909440 at *39-*40, we add this brief note: Insofar as Provenzano

contends that his advisory jury received insufficient narrowing instructions, that claim is foreclosed by the Teague v. Lane, 489 U.S. 288,109 S. Ct.1060 (1989), nonretroactivity doctrine. See Lambrix v. Singletary, 117 S. Ct. 1517 (1997); Davis v. Singletary, 119 F.3d 1471, 1477-78 (11th Cir. 1997).

The Caldwell v. Mississippi Claim

The district court held that Provenzano's Caldwell v. Mississippi, 472 U.S. 320, 105 S. Ct. 2633 (1985), claim is not procedurally barred but is devoid of merit. See Provenzano v. Singletary, manuscript op. at 39-48, 1997 WL 909440 at *23-*27. The State contends that the claim is procedurally barred, and that may be so. However, we need not resolve the procedural bar issue, because we agree with the district court that Provenzano's Caldwell claim is meritless. See Smith v. Dugger, 840 F.2d 787, 791 (11th Cir. 1988).

Since the district court released its opinion, we have issued our decision in Davis v. Singletary, 119 F.3d 1471 (11th Cir. 1997). In Davis, at 1481-82, we held that our decisions in Mann v. Dugger, 844 F.2d 1446 (11th Cir. 1988), and Harich v. Dugger, 844 F.2d 1464 (11th Cir. 1988) (en banc), had to be read in light of the Supreme Court's subsequent decisions in Romano v. Oklahoma, 512 U.S. 1, 114 S. Ct. 2004 (1994), and Dugger v. Adams, 489 U.S. 401, 109 S. Ct.

21

1211 (1989). Doing that, we concluded that there can be no <u>Caldwell</u> violation unless the jury is affirmatively misled regarding its role in the sentencing process. <u>See</u> 119 F.3d at 1482. Moreover, we held in <u>Davis</u> that in deciding a <u>Caldwell</u> claim questionable remarks and comments must be considered in the context of the entire trial. <u>See</u> <u>id</u>. Having done so in this case, we conclude that the district court was correct when it decided that there was no <u>Caldwell</u> violation.

## CONCLUSION

The district court's denial of habeas relief is AFFIRMED.