IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 24, 2001 Session

## LELAND RAY REEVES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Macon County**
**No. 96-43     J. O. Bond, Judge**

_____

**No. M2000-01896-CCA-R3-PC - Filed May 18, 2001**

_____

The petitioner's conviction for rape was affirmed on direct appeal. He filed a petition for post-conviction relief in which he claimed that he received inadequate assistance of counsel at his trial. Following a hearing, the post-conviction court dismissed the petition. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

A. Russell Brown, Lafayette, Tennessee, for the appellant, Leland Ray Reeves.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Guy E. Yelton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner's 1996 conviction for rape was affirmed by this court on direct appeal. State v. Leland Ray Reeves, No. 01C01-9711-CR-00515, 1999 WL 155926 (Tenn. Crim. App. Mar. 23, 1999), perm. to appeal denied (Tenn. Oct. 25, 1999). Subsequently, he filed a petition for post-conviction relief in which he claimed that his trial counsel was ineffective. The post-conviction court held a hearing at which both the petitioner and his trial counsel testified. Following the dismissal of the petition for post-conviction relief, the petitioner appealed, the single issue being whether his trial counsel was ineffective.

In the petition, three claims were made as to ineffective assistance of counsel: that counsel did not adequately investigate the case, that counsel did not call witnesses whose testimony would have been helpful to the defense, and that counsel should have objected to the amendment of the indictment. We will now examine each of these claims.

The petitioner testified at the hearing that he had wanted his stepson, Jimmy Cravens, to testify at trial, for he would have said that he had had sexual relations with the victim, who was a minor at the time of the offense. The petitioner's trial counsel testified that, prior to the trial, the petitioner had said that he wanted Cravens to testify that he had had sexual relations with the victim. Trial counsel said that he discussed with the petitioner that if Cravens gave this testimony, he would be admitting his guilt to having sexual relations with a minor. On several occasions, counsel called a telephone number which was supposedly that of Cravens, but was not able to make contact with him. He then sent a letter to Cravens, and it is unclear whether he ever got a response from Cravens. However, he testified that he "could never get him in to Tennessee." Apparently, Cravens was outside of the state when the attempts were being made to secure his attendance at the trial. Cravens was not present at the post-conviction hearing, and no showing was made as to what his testimony would have been had he testified at the trial.

The petitioner also wanted his trial counsel to call three school-age boys as witnesses:

> There was three boys that had spoke [sic] to my son at school that [the victim] had told that she had done things to him, my boy. And they knew this. And I asked [trial counsel] if he would subpoena them and I believe he went to speak to one of them. I don't know about the other two.

During the hearing, the petitioner's trial counsel testified that he had spoken with one of the three boys and a person who was "connected" with one of the others, as well as two females who also were present when the supposedly helpful statements were made. Counsel "came away with the conclusion that we would not have fared very well with them." Trial counsel concluded that the three boys would be "hostile" witnesses, concluding that their testimony would not have corroborated that of the petitioner's stepson and "would have been more harmful than it would have been helpful in my opinion." He believed that it would have been a "bad trial tactic" to have them testify. Neither the petitioner's stepson, the two females, nor the three boys testified at the post-conviction hearing.

As for why he did not retain an investigator to assist him in the investigation and trial, counsel testified that he had not believed that an investigator could have assisted him because the trial was "a swearing match between him and her." He testified that he had retained a registered nurse to assist him in interpreting the victim's medical records.

The petitioner testified that he had been indicted as "Leland Frank Reeves" but that his true name was "Leland Ray Reeves." Trial counsel said that he had not objected to the amendment of the indictment because there was no question that he was the person accused by the victim as having raped her. Counsel had discussed this with the petitioner and considered it to be a clerical error.

Following the proof presented, the post-conviction court found as follows:

Now, when we get down to the other part of it, the burden is on the petitioner to establish his rights and that's what we have to listen for. He's made some allegations but allegations have to be followed up by something substantive somewhere. I see today the same witnesses that were talked about are not here to testify today. I think they would have to be here to show that they would have testified to something different, to have made any difference. I don't see that we can speculate what anybody is going to say. It was investigated, and [trial counsel], I think covered it in his testimony what he did. Sounds reasonable to the Court what he did. He had, maybe not – maybe if the word investigator was used and Mr. Poindexter at that time I think evidently was working out of his office, and he wasn't a lawyer, but he was something, maybe he was an investigator. I don't know what you would call somebody in that position. He said he helped in the case. So I don't see any ineffective assistance of counsel from this record that I've seen so far.

I remember the case, thought it was well tried and looking back at the case [trial counsel] talked me into making an awful mistake. These statutory rape charges, we did five counts of rape, ended up being lesser offenses of statutory rape, when that's against the law really. I just made the mistake by charging that and he escaped possibly four other counts because of the way the jury was charged. Although [trial counsel] did ask for it, and the State, I think, agreed to it, that it would be a lesser included, and I kind of thought it was, but we were all wrong as it turns out. It's just one of those things. It went to his benefit. I remember the facts. I thought they had him on all five counts of rape, to be honest about it, in my opinion at the time. But the jury made the decision not I, and I thought it was a well tried case from the State and Defendant's point of view.

You don't always get the results you want when you try one of these cases and don't plea bargain ahead of time. A lot of times you don't get the results you want. But I don't see any ineffective assistance of counsel here at all. What was done appears to be normal to me. What a normal attorney would do under those circumstances. And you can't make people testify. You can't make people show up, and if you don't know the address to issue subpoenas you can't create addresses. But if you investigate it and come back and talk to people that just completely deny the fact that what your client said is true, you sure don't want to put them on the witness stand. You have to attack it for sure if that happened, if you're trying to defend someone. You can say you can make them a hostile witness all you want to, but

you put them on and then all at once you ask a question and they give bad answers to you on your side it's not going to help you any, I'll tell you that. It will hurt you. So I thought it was a well tried case and I don't see any wrong on the ineffective. The witnesses subpoenaed, that was discussed, the investigation evidently was done, sounds like it was done. And the amendment of a misnomer on a name where the prosecuting witness points you out in court and says, that's the person, the fact that someone has typed in the wrong name, that doesn't affect the indictment. The facts of the indictment were there, what you were accused of. And that wouldn't have changed this Court one iota had he contested it or not contested it. It didn't make any difference. If the prosecutor can point them out and it's just a mis-name the Court is going to allow that to be amended because it goes to the true intent of the parties as to who the person is. And as long as we have the right party that's all that would be to it anyway. So, the Court's going to overrule the motion.

The findings of fact of the post-conviction court are conclusive on appeal, unless the evidence preponderates against the findings, see State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999) (citing State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)); and the appellate court cannot "reweigh or reevaluate" the evidence. Id.; see also Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997), cert. denied, 525 U.S. 830, 119 S. Ct. 82, 142 L. Ed. 2d 64 (1998). However, the appellate court's review of the application of the law to the facts is *de novo*, without a presumption of correctness. See Burns, 6 S.W.3d at 461; Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1997). Additionally, issues as to whether counsel was ineffective and whether prejudice resulted are mixed questions of law and fact. Burns, 6 S.W.3d at 461 (citing Goad v. State, 938 S.W.2d 363 (Tenn. 1996)).

The petitioner's post-conviction petition was filed on February 28, 2000, and is therefore governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-201–222. The petitioner must establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(2)(f).

Explaining the requirement that an accused is entitled to constitutionally effective assistance of counsel, the United States Supreme Court, in Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The Tennessee Supreme Court has often recited the two-prong test set forth in Strickland to be applied to ineffective assistance claims:

> To prevail on a claim of ineffective counsel in this proceeding, the appellant must prove by a preponderance of the evidence that the

advice given or services rendered by his counsel fell below the range
of competence demanded of attorneys in criminal cases. <u>Baxter v.
Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). He must also demonstrate
prejudice by showing a reasonable probability that but for counsels'
error, the result of the trial proceeding would have been different.
<u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674 (1984); <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn.
1996).

<u>King v. State</u>, 989 S.W.2d 319, 330 (Tenn. 1999).

Specifically, the courts have been counseled against overdependence on hindsight in
assessing counsel's performance. In fact, courts must be "highly deferential":

A fair assessment of attorney performance requires that every effort
be made to eliminate the distorting effects of hindsight, to reconstruct
the circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time. Because of the
difficulties inherent in making the evaluation, a court must indulge a
strong presumption that counsel's conduct falls within the wide range
of reasonable professional assistance; that is, the defendant must
overcome the presumption that, under the circumstances, the
challenged action "might be considered sound trial strategy." See
*Michel v. Louisiana*, 350 U.S., at 101, 76 S. Ct., at 164.

<u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>see</u> <u>also</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn.
1982) (holding that counsel should not be measured by "20-20 hindsight"). Appellate courts must
recognize that "[t]here are countless ways to provide effective assistance in any given case" and that
"the best criminal defense attorneys would not defend a particular client in the same way."
<u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065.

Other cases make clear the showing which must be made as to the criticized defense. <u>See</u>
<u>Chandler v. United States</u>, 218 F.3d 1305, 1315-16 (11th Cir. 2000), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 121
S. Ct. 1217 (2001) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)) ("[T]o
show that the [lawyer's] conduct was unreasonable, a petitioner must establish that no competent
counsel would have taken the action that his counsel did take."); <u>Provenzano v. Singletary</u>, 148 F.3d
1327, 1332 (11th Cir. 1998) (noting that conduct of counsel is unreasonable only upon a showing
"that no competent counsel would have made such a choice").

At the hearing, there was no showing as to how any of the three classmates of the petitioner's
stepson would have testified, or how Jimmy Cravens would have testified, had any of these
witnesses been presented on behalf of the petitioner at his trial. There was no showing made as to
how an investigator could have assisted trial counsel, especially given the nature of the accusations.

Applying the appropriate standard of review and the applicable law to this matter, we conclude that the petitioner has failed to demonstrate that his trial counsel was ineffective or that no reasonable attorney would have proceeded as did the petitioner's trial counsel. Additionally, we note that the petitioner did not demonstrate that the witnesses whom he claims that counsel should have presented during the trial would have, in fact, been helpful to his defense. Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S. Ct. 1335, 134 L. Ed. 2d 485 (1996) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, Hendricks cannot meet the prejudice prong of the Strickland test."); United States v. Ashimi, 932 F.2d 643, 649 (7th Cir. 1991) (stating that a petitioner cannot establish prejudice without showing "what the attorney would have discovered after 'adequate' investigation").

## CONCLUSION

Based upon our review of the record and applicable law, we affirm the judgment of the post-conviction court denying relief and dismissing the petition.

_____
ALAN E. GLENN, JUDGE

-6-