969 So.2d 1055 (2007)
Sean CASEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1601.
District Court of Appeal of Florida, Fourth District.
October 3, 2007.
Rehearing Denied December 6, 2007.
Sharon Lee Stedman, Orlando, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Following an evidentiary hearing, the trial court denied Casey's rule 3.850 motion for post-conviction relief.
*1057 At the start of the evidentiary hearing, Casey's post-conviction attorney informed the court that he intended to call an attorney as an expert witness to offer an opinion on whether trial counsel rendered ineffective assistance. The court announced that it would not allow Casey to call the expert/attorney witness. Casey's attorney claimed the expert attorney's testimony was necessary to prove trial counsel's performance fell below that of a competent attorney. This is the primary issue we address on appeal.
Casey was convicted of premeditated murder and robbery with a deadly weapon. During the trial, Casey's attorney considered, but elected not to raise, a voluntary intoxication defense[1] notwithstanding evidence that Casey had been taking drugs prior to the killing and the availability of such a defense at that time. Casey claims this decision constitutes ineffective assistance of counsel. The record reflects the decision was one of strategy. We affirm.
At the evidentiary hearing, a forensic toxicologist testified that a person taking Ecstasy would respond in an "irrational way" and "impulsively." On the night of the murder, Casey took Ecstasy, "Special K" (Ketamine), and marijuana. The expert said that a person taking this combination of drugs would "react to a given stimulus and it's an impulsive response rather than a rational response." Supposedly, if Casey took Ecstasy and Ketamine at three in the morning, he would be expected to be in the "impulsive" stage at 6:30 in the morning, approximately the time he killed the victim.
On cross-examination, the toxicology expert acknowledged that the drug user will have hallucinations and "may imagine certain things and then later refer to [them] as a memory but they're not, they're hallucinetic-hallucinogenic" thoughts. However, he could not point to any comments in Casey's statement as constituting a hallucinogenic memory. Casey's medical records were also introduced. He was a long time addict, who had been placed in eight to ten treatment centers since the age of twelve.
The record reflects substantial evidence that trial counsel considered a voluntary intoxication defense strategy, discussed it with the client and his father, and rejected it.
During the evidentiary hearing, Casey attempted to present the testimony of the criminal law expert and, again, the court denied the request. The defense expert was prepared to testify that, in his opinion, voluntary intoxication was Casey's only reasonable defense. At no point did Casey's attorney suggest the expert would testify as to the reasonableness of the investigation or any avenue of investigation not taken.
Casey's trial counsel testified that he considered the voluntary intoxication defense based upon his investigation, and he knew that it was a legal defense to the crimes charged. However, it appeared to him by the time of trial, that voluntary intoxication would be an inappropriate defense to assert at the trial, as it would be detrimental to their primary claim that the victim made unwelcome sexual advances toward Casey and pushed him, at which point Casey "just snapped and he stabbed" the victim. Trial counsel did not believe Casey acted with premeditation. Instead, it was his theory that the killing was "something that happened spontaneously as a reaction to being pushed for homosexual activity that he didn't want."
*1058 On cross-examination, Casey's post-conviction attorney showed trial counsel a letter from a Dr. Milo, who had reviewed Casey's medical records and suggested a brain scan. Three months before the trial began, Dr. Milo suggested that a voluntary intoxication defense may be viable. Another doctor also had written that drug induced intoxication was indicated. However, trial counsel's ultimate decision was that it was "not going to help us, it might hurt us, it is inconsistent with our presentation," and the decision was reached jointly with Casey and his father.
The trial court decided Casey had failed to show ineffective assistance of counsel because, despite the expert's disagreement with trial counsel's strategy decision, "alternate courses were considered and rejected and trial counsel's decision was reasonable."
The question of whether a strategy or tactic is reasonable on a post-conviction relief proceeding is decided by the trial court as an issue of law. Provenzano v. Singletary, 148 F.3d 1327, 1331-32 (11th Cir.1998). "[I]t would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn." Id. at 1332. Provenzano was subsequently cited with approval by the 11th Circuit sitting en banc, in Freund v. Butterworth, 165 F.3d 839, 863 n. 34 (11th Cir.1999). We note that Provenzano was also followed in an unpublished opinion, People v. Burbridge, not reported in NW 2d, 2005 WL 1540482 (Mich.App.).
There is no due process or other violation in the trial court's excluding expert testimony in the post-conviction evidentiary hearing.
Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not of fact.
Provenzano, 148 F.3d at 1330.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court clearly intended that reviewing courts give deference to counsel's performance and try to eliminate the "distorting effects of hindsight." Id. at 689, 104 S.Ct. 2052. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id. The justices were concerned that failing to provide this deference would inevitably lead to a dual trial system of criminal justice, the first being the traditional criminal trial, and the second would involve trials concerning the unsuccessful defense. Id. at 690, 104 S.Ct. 2052.
The "reasonableness" component of the first prong of Strickland, to show deficient performance, is whether no trial attorney would have made the same strategic decision because doing so failed to make the "adversarial testing process work." Id. It is to this component that Casey wished to present expert testimony.
In Occhicone v. State, 768 So.2d 1037 (Fla.2000), the supreme court noted "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under *1059 the norms of professional conduct." Id. at 1048. "Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions." Id.; see also Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995).
We recognize that Florida law provides that "[b]oth the performance and prejudice components of an ineffectiveness claim are mixed questions of law and fact." Asay v. State, 769 So.2d 974 (Fla.2000). If each prong of the Strickland standard includes factual and legal questions, then it follows that the determination of whether the attorney made a strategic decision (meaning, understood the possible choices and purposefully took one as opposed to the other) is the factual portion, and the determination of whether that strategic decision was reasonable is the legal portion.
The factual portion of this prong involves the determination of what acts were taken by the trial attorney, what scenarios and laws were considered, and if the ultimate decision was purposefully made. Testimony is not required as to whether the actions taken were "reasonable," as this is a matter of law to be made by the judge after consideration of the factual testimony.
The Supreme Court, in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), wrote the following concerning reasonableness in this context:
[O]ur principal concern in deciding whether [counsel] exercised "reasonable professional judgment" is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable.
Id. at 522-23, 123 S.Ct. 2527. Further, Wiggins relied on the following Strickland language:
`[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'
Id. at 521-22, 123 S.Ct. 2527 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052) (alteration in original); see also Lamarca v. State, 931 So.2d 838, 850 (Fla. 2006) ("We have long recognized that strategic decisions by trial counsel are `virtually unchallengeable.'" (quoting Downs v. State, 453 So.2d 1102, 1108 (Fla.1984))); Davis v. State, 915 So.2d 95, 115 (Fla.2005) ("[C]ounsel [i]s not ineffective in exercising his decision to discontinue further investigation into matters that were already known to him and that he had strategically determined should not be presented to the jury."). Where, as here, the trial court determines that the trial attorney conducted a "thorough investigation of law and facts relevant to plausible options," the trial court is free, as a matter of law, to conclude that the strategic decision was reasonable. Wiggins, 539 U.S. at 521, 123 S.Ct. 2527 (internal quotation marks and citation omitted).
In the instant case, if Casey was presenting the expert to comment on the reasonableness of the investigation, there are grounds for allowing this testimony. However, because the expert was asked to *1060 testify as to the reasonableness of the attorney's strategic decision (or whether he or any other attorney would have made this same decision), it was not an abuse of discretion to exclude the testimony as irrelevant or to consider it speculative as infringing on the province of the court. We note that, although Casey's brief on appeal does assert that trial counsel failed to thoroughly investigate Casey's past history, the proffered expert testimony did not address this topic, and it was not argued to the trial court.
We have considered, and deem inapposite, Julien v. State, 917 So.2d 213 (Fla. 4th DCA 2005), in which this court reversed the denial of a rule 3.850 motion, after an evidentiary hearing, wherein a criminal law expert testified. In that case, Julien entered a plea to felony theft and became subject to deportation proceedings. Julien argued that his trial attorney never informed him of the pre-trial intervention program (PTI). There, the expert testified that "an attorney must always investigate the possibility of the PTI program and advise the client about resolving the case through PTI." Id. at 214. This court determined the failure to investigate and inform Julien about the PTI program was unreasonable and, thus, amounted to ineffective assistance of counsel. While this case might, initially, seem to stand for the proposition that expert testimony is permissible in a rule 3.850 motion evidentiary hearing, it appears that the expert testimony in question related to the investigation undertaken by the attorney, and not to whether the ultimate decision was reasonable.
In any event, we deem any error in this order to be harmless.
As to all other issues and arguments raised, we also find no reversible error or abuse of discretion. Therefore, the order is affirmed.
KLEIN and MAY, JJ., concur.
NOTES
[1] The offense was committed March 25, 1999, prior to the enactment of section 775.051, Florida Statutes, eliminating this defense.