[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11861
_____

D.C. Docket No. 8:13-cv-00060-SDM-TGW

ESSEX INSURANCE COMPANY,

Plaintiff-Appellant,

versus

TINA MARIE ENTERTAINMENT, LLC,
d.b.a. Scene Premium Night Club,
CHASMA S. LAGRANT,
SATIS J. BAILEY,
DEONTE ARCHER,
KENDRIC STEPHENS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 13, 2015)

Before ED CARNES, Chief Judge, DUBINA and GILMAN,[*] Circuit Judges.

PER CURIAM:

In January 2013, Essex Insurance Co. filed a one-count complaint seeking reformation of an insurance contract.  It named as defendants Tina Marie Entertainment, LLC (TME) and four individuals:  Chasma Lagrant, Satis Bailey, Deonte Archer, and Kendric Stephens.  The individual defendants had been injured in a Florida nightclub that TME had insured under an Essex commercial general liability insurance policy.  Essex sought reformation of that policy to include two endorsements, a "restaurant and bars" endorsement and an "assault and battery sublimit" endorsement, that were not attached to the policy when Essex issued it to TME.

Because they failed to answer the complaint, the clerk entered defaults against TME, Lagrant, Bailey, and Archer.  See Fed. R. Civ. P. 55(a).  The remaining parties, Essex and Stephens, filed cross motions for summary judgment. In April 2014, the district court granted summary judgment in favor of Stephens. In a separate order, the court dismissed with prejudice Essex's claims against TME

---

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

and Archer, finding that Essex had failed to state a claim for reformation.[1]  This is

Essex's appeal of both orders.

## I.

Essex contends that the district court erroneously granted summary

judgment to Stephens on Essex's claim for reformation of the insurance policy.

We review de novo a district court's grant of summary judgment, viewing all facts

and reasonable inferences in the light most favorable to the nonmoving party.  See

Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014).

In Florida, "[a] court of equity has the power to reform a written instrument

where, due to a mutual mistake, the instrument as drawn does not accurately

express the true intention or agreement of the parties."[2]  Providence Square Ass'n,

Inc. v. Biancardi, 507 So. 2d 1366, 1369 (Fla. 1987).  Given the "strong

presumption" that a contract accurately expresses the true intention or agreement

of the parties, however, the party seeking reformation on the basis of a mutual

mistake faces a high evidentiary burden.  Ins. Co. of N. Am. v. Ours, 266 So. 2d

168, 169 (Fla. 4th DCA 1972).  That party must show by clear and convincing

evidence "that the parties [to the contract] agreed on one thing and when they put it

---

[1] By the time the court ruled on the cross motions for summary judgment, Essex had settled the underlying personal injury lawsuits filed by Lagrant and Bailey.  The court's summary judgment order dismissed as moot Essex's claims against those two defendants.

[2] No one disputes that Florida law applies in this diversity case.

3

in the contract they said something different." Blumberg v. Am. Fire & Cas. Co., 51 So. 2d 182, 184 (Fla. 1951); see Rosenthal v. First Nat'l Fire Ins. Co., 77 So. 92, 94 (Fla. 1917); see also Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 8 F.3d 760, 765–67 (11th Cir. 1993). "Clear and convincing evidence" is evidence that "produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC, 139 So. 3d 869, 872 (Fla. 2014).

Essex has not shown by clear and convincing evidence the existence of a mutual mistake. We have recognized that Florida law imposes "stringent standards for reformation." Golden Door Jewelry Creations, Inc., 8 F.3d at 766. To determine if those standards are met, we compare those cases in which Florida courts have addressed the availability of reformation based on mutual mistake with the case at hand. See id. Florida courts have found mutual mistake where the party seeking reformation presented evidence of "contact between the [contracting] parties," such as discussion or negotiation of a particular provision, showing that they agreed on one thing before they put their agreement in writing and that their written agreement said something different. USAA Cas. Ins. Co. v. Threadgill, 729 So. 2d 476, 478–79 (Fla. 4th DCA 1999) (discussing cases); see, e.g., Fed. Ins. Co. v. Donovan Indus., Inc., 75 So. 3d 812, 813–15 (Fla. 2d DCA 2011). Essex,

4

however, points to no evidence that it and TME ever discussed or negotiated the inclusion of the two endorsements at issue before Essex issued the policy without them. Instead, it attempts to show mutual mistake by relying primarily on two facts: that the quote it provided to TME for the policy listed the two endorsements by form number and title, and that TME accepted the quote and asked that coverage be bound according to its terms. Even if we were to view this case in a vacuum, and not (as we must) by comparing it to Florida cases that address the availability of reformation, we would still conclude that Essex has failed to create a factual question on whether there was a mutual mistake. Indeed, the evidence shows just the opposite, because the policy binder itself provides that "[c]overages may differ from those on the application or quote." Since we cannot say "without hesitancy" that Essex and TME agreed to include the two endorsements at issue, we hold that the district court properly refused to reform the commercial general liability policy.[3] S. Fla. Water Mgmt. Dist., 139 So. 3d at 872.

---

[3] We decline to consider Essex's alternative argument, raised for the first time on appeal, that we should direct the district court to reform the policy to include the two endorsements at issue but invalidate on public policy grounds the "wasting limit" provision in the assault and battery sublimit endorsement. See, e.g., Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (observing that we will not consider "an issue not raised in the district court and raised for the first time in an appeal") (quotation marks omitted); Hurley v. Moore, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."); Nyland v. Moore, 216 F.3d 1264, 1265 (11th Cir. 2000) (same); Provenzano v. Singletary, 148 F.3d 1327, 1329 n.2 (11th Cir. 1998) (same). In any event, as far as we can tell, Essex's alternative resolution does nothing to advance its position in the underlying dispute about the policy limit applicable to Stephens' individual claim.

II.

Essex also contends that the district court erroneously dismissed its claims against TME and Archer for failure to state a claim for reformation. Its contention depends on the fact that, as defaulted defendants, TME and Archer are charged with admitting the well-pleaded allegations in Essex's complaint, including the existence of mutual mistake. See, e.g., Perez v. Wells Fargo N.A., — F.3d. —, No. 13-13853, 2014 WL 7229271, at *8 (11th Cir. Dec. 18, 2014); see also Strickland v. Thelman, 665 So. 2d 284, 287 n.3 (Fla. 5th DCA 1995) (observing that whether there was a mutual mistake is a question of fact); Hieber v. Hieber, 151 So. 2d 646, 649 (Fla. 3d DCA 1963) (same).

Essex cannot show that any procedural error in the way the district court disposed of its claims against TME and Archer affected its substantial rights. See Fed. R. Civ. P. 61; 28 U.S.C. § 2111; United States v. Killough, 848 F.2d 1523, 1527 (11th Cir. 1988) (noting that the party asserting error has the burden of proving that the error prejudiced its substantial rights); see also Jimenez v. Weinberger, 523 F.2d 689, 700 (7th Cir. 1975) ("[P]rocedural error does not warrant reversal unless it affects the substantial rights of the parties."). Although Essex's complaint named five defendants, it sought reformation of one insurance policy on one ground, and that was mutual mistake. In granting summary judgment in favor of one of those defendants, the court determined as a matter of

6

law that Essex was not entitled to reform the policy based on mutual mistake.

Thus, Essex's identical claims against two other defendants necessarily fail.[4]

**AFFIRMED.**[5]

---

[4] The fact that the clerk entered a default against TME before the court granted summary judgment in favor of Stephens does not change our conclusion. The order of those events might matter if Essex had argued that TME's admission of the complaint's factual allegations about mutual mistake controlled the court's inquiry on summary judgment. Essex briefly alluded to that argument in its summary judgment motion but did not raise it before us. Essex has therefore abandoned any argument it might have made concerning that procedural issue. See, e.g., Access Now, Inc., 385 F.3d at 1330 ("Any issue that an appellant wants [us] to address should be specifically and clearly identified in the brief. . . . Otherwise, the issue — even if properly preserved at trial — will be considered abandoned.") (quotation marks omitted).

[5] We express no opinion on the ultimate disposition of Stephens' underlying personal injury claim against Essex, which he has brought in a separate lawsuit.