IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 8, 2002 Session

## MAURICE PIERRE TEAGUE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Carroll County**
**No. 98CR-1212     Julian P. Guinn, Judge**

---

**No. W2001-00533-CCA-R3-PC  - Filed February 26, 2002**

---

The petitioner was convicted of possession of a controlled substance with intent to sell, and his conviction was affirmed on direct appeal. In his petition for post-conviction relief, he asserted that trial counsel was ineffective. The post-conviction court dismissed the petition, following a hearing. We affirm the order of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Maurice Pierre Teague.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Robert G. Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was convicted in the Carroll County Circuit Court of possession of a controlled substance with intent to manufacture or sell and sentenced as a Range I standard offender to confinement for ten years and a fine of $10,000. The conviction was affirmed upon direct appeal to this court, and application for permission to appeal was denied. See State v. Maurice Pierre Teague, No. 02C01-9806-CC-00187, 1999 Tenn. Crim. App. LEXIS 174 (Tenn. Crim. App. Feb. 26, 1999), perm. to appeal denied (Tenn. July 12, 1999). Subsequently, he filed a petition for post-conviction relief, claiming that trial defense counsel was ineffective in the following ways:

      I.     Failing to interview and/or properly prepare witnesses;

      II.    Failing to investigate and/or subpoena and/or call needed or desired witnesses;

III. Failing to call and impeach or implicate adverse witnesses, accomplices or co-defendants;

IV. Failing to request/move for separate trials to timely allow codefendant testimony, or impeachment and implication by Fifth Amendment plea;

V. Failing to make/request discovery, or make/request effective discovery;

VI. Failing to fully advise Petitioner of potential charges/convictions/sentences so that Petitioner cold evaluate benefits of negotiated guilty plea compared to hazards of unsuccessful trial;

VII. Failing to advise legal ramifications and trial impact of co-defendant status, guilty pleas and sentences; and

VIII. Failing to advise of legal ramifications and trial impact of agreeing to stipulations as to drug amount and/or not so stipulating.[1]

Based upon our review, we affirm the judgment of the post-conviction court.

In our opinion following the direct appeal of the petitioner's conviction, the evidence was set out:

On the afternoon of October 16, 1997, Sergeant Johnny Hill of the Huntingdon Police Department received information regarding drug activity at a mobile home on Highway 22 South in Huntingdon. As a result of this information, the officer believed LaVeta King and Maurice Pierre Teague were in possession of drugs and their names were listed on a search warrant. Officer Hill had observed the appellant at this residence upon previous occasions. Thereafter, the officers observed the home for four hours before executing a search warrant upon the residence of LaVeta King. During this four hour period, the officers maintained surveillance of the only access road leading to her residence. They observed no vehicles traveling the road. Upon executing the warrant, Officer Kevin Brown of the Carroll County Sheriff's Office entered the residence first. Sergeant Hill followed closely behind.

_____

[1] Since Issues IV and V are not discussed in the appellate brief, they are waived. See Tenn. R. App. P. 27; Tenn. Ct. Crim. App. R. 10(b).

Upon entering the residence, the officers discovered three people in the living room including LaVeta King. Officer Brown proceeded to process those individuals. Officer Hill immediately went toward the bedroom to the right. The appellant was standing in the door of the bedroom just three feet away from the bed. Two other men, Lawrence Sherrill and Danny Ellis, were in the same room. Officer Hill observed money totaling $330 and two pagers on the bed. Three other pagers, a loaded pistol, ammunition, and several items of male clothing were also found elsewhere in the residence. All of these items remain unclaimed. The three men, including the appellant were searched. The officer removed a rock of crack cocaine weighing approximately one-tenth of a gram from the hand of the appellant and also removed money from his pockets. After searching the room, "immediately under the bed by where Mr. Teague [appellant] was standing there was a plate ... [containing] approximately twenty-two grams of crack cocaine." The plate contained one large rock of cocaine and several smaller rocks. It appeared to the officer to have been pushed under the bed hurriedly because other smaller rocks were recovered from the floor beside the plate. The appellant was the only person in the residence with cocaine found on his person. Officer Hill estimated the street value of the cocaine to be between four and six thousand dollars. Following the proper procedures for chain of custody, a forensic scientist with the TBI identified the substances turned over to her as cocaine.

The defense called Aaron Dudley, Jr., the uncle of the appellant. Dudley stated that on the date of the offense that the appellant lived with him in McKenzie. Upon cross-examination, Dudley testified that the appellant stayed with him "off and on." The appellant spent a considerable amount of nights away from his uncle's home. He was aware that the appellant and King had maintained a relationship with each other prior to this incident. Dudley was impeached with a prior conviction of sale of cocaine.

LaVeta King testified that she and the appellant were no longer romantically involved on the date of this occurrence. She stated that the appellant was at her residence "every now and then." When the police arrived, she was sitting on the couch in the living room. The appellant was in the bedroom located adjacent to the living room. King never saw the appellant selling any drugs. Upon cross-examination, King stated that Casey Scott was living with her at the time. She acknowledged that men's clothing was found in her

residence, however, she did not know to whom it belonged. She stated that the appellant had only been at her mobile home five or ten minutes when the police arrived with the warrant. She did not know how he arrived at her home. She had no idea what the men were doing in her bedroom for thirty minutes nor did she know anything about the large amount of crack cocaine, pagers, or money found therein. She admitted that she had previously pled guilty to a charge in this case.

Kenneth Sherrill, a friend of the appellant, testified that he was one of the six people arrested at King's home that evening. He had also previously pled guilty to charges arising from this occurrence. He reiterated that the appellant lived with his uncle. He never saw the appellant sell any drugs. He stated that he had only been at King's residence for three minutes when the police arrived. When the police entered he was in the living room visiting with King. He was unaware that his brother Lawrence Sherrill was there until the police brought him out of the bedroom.

The appellant testified that he had never lived with King. At the time of the arrest, he and King were "broken up." He stated that [he] would visit her once or twice a week and spent the night there "sometimes." He provided that he never kept any clothing or personal effects at her residence. He testified that Ellis was returning King's car and he went along for the ride to see Lawrence Sherrill. He admitted to buying a rock of crack cocaine for $15 while in the bedroom. While he admitted to misdemeanor possession of cocaine, he denied selling cocaine or any knowledge of the large rock of cocaine under the bed. He denied that the money and pagers on the bed belonged to him.

The State impeached the appellant with two prior convictions including a theft of property and an aggravated burglary. The appellant admitted to driving King's car after their relationship had ended. Furthermore, he admitted that he had several girlfriends and would stay with each of them. He stated that he worked for Republic Doors from August until September, however, he was unemployed during the month of October. He related that his mother, uncle, and girlfriends provided financial support for him throughout this period. The appellant stated that he bought the rock of crack cocaine from Lawrence Sherrill and that he and Ellis were going to share it.

Teague, 1999 Tenn. Crim. App. LEXIS 174, at *1-7 (footnote omitted).

## ANALYSIS

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The U.S. Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

-5-

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997).

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999), "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

Trial defense counsel presented three witnesses, in addition to the petitioner. Aaron Dudley, Jr., testified that the petitioner did not live at the place where he was arrested. LaVeta Shanelle King, who lived in the house where the arrest occurred, testified that the petitioner did not live there, and Kenneth Edward Sherrill also testified that the petitioner did not live at the place where he was arrested. At the post-conviction hearing, the petitioner testified that he had requested his trial counsel to call Danny Ray Ellis and Lawrence Sherrill as witnesses at the trial. Both of these witnesses testified at the post-conviction hearing.

Danny Ray Ellis testified at the hearing that he had been arrested at the same time as the petitioner and had later pled guilty to "possession of drugs with the intent to sell or manufacture." He said that he had been one of the two other persons in the room with the petitioner at the time of the arrest, and that the petitioner was there to buy drugs for his personal use. He said that he had neither been interviewed nor called to testify by trial defense counsel but that, if he had, his testimony would have been as he had testified at the post-conviction hearing.

During cross-examination, Ellis testified that he had also gone to the trailer to buy drugs and gave his assent after being asked if he was buying drugs from the petitioner's girlfriend, LaVeta

King. When asked by the court whom the drugs belonged to, Ellis said that "[i]t could have been several people." As for whom he paid for the drugs, Ellis testified, "I didn't pass any money at the time." He said that he did not see the petitioner pay anyone.

Lawrence Sherrill testified at the post-conviction hearing that he had been in the bedroom of the trailer where he was arrested with the petitioner and Danny Ray Ellis. He said that he had pled guilty to felony possession of cocaine. He testified that the petitioner had bought from him a $20 rock of cocaine, which was a small amount, and that the rest of the cocaine in the room belonged to him. When asked if he had been interviewed by the petitioner's trial counsel, he responded, "Naw, not that I know of." However, he said that he would have testified if a subpoena had been served on him. He said that, at the time of the arrest, he had not been asked whom the cocaine belonged to. He said that, in addition to his conviction for possession of cocaine occurring at the same time the petitioner was arrested, he also had been convicted of introducing contraband into a penal institution.

Trial defense counsel testified at the post-conviction hearing that he had discussed trial strategy with the petitioner, including whom to call as witnesses. They decided to call Dudley to establish that the petitioner was neither the owner nor the renter of the residence. LaVeta King was called to testify to show that she lived at the residence and the petitioner did not, and, further, that she did not see the petitioner with cocaine on the day of his arrest. Counsel said that he and the petitioner had discussed calling Kenneth Sherrill as a witness and that he had been called to "state the facts," counsel believing that he would communicate well to the jury.

Counsel believed that he and the petitioner had discussed whether to call Danny Ray Ellis and Lawrence Sherrill as witnesses, and they considered the effect of the criminal record of each. He said that they had discussed the effect of presenting too many witnesses and problems resulting from a "bunch of witnesses who either can't communicate or cannot believably describe the situation, or have, maybe have, a long record, that a jury may not connect with them."

He said that he could not remember, for certain, whether he had interviewed Danny Ray Ellis but believed that he had interviewed Lawrence Sherrill, and said that he had known him before. He said that he had known Ellis and Sherrill had pled guilty to charges against them as the result of the incident when the petitioner was arrested. The petitioner had the final voice as to whom would be called as a witness in his behalf. But, his trial counsel did not feel that Lawrence Sherrill would make a good witness:

> I had recommended that we not use Lawrence Sherrill. I ah, Lawrence Sherrill, to me, would not have made a good witness. He comes across in a manner that ah, to me doesn't connect with a jury. And of course, like I said, everything that we did was based on our corroboration. We talked together, and we decided who to call. And Lawrence Sherrill would not have made a good witness, I don't – I still believe that.

Counsel said that he and the petitioner had talked about the fact that, since Ellis and Lawrence Sherrill had pled guilty to felony possession of cocaine, the jury might believe that the drugs belonged to them if, apparently, they testified. However, counsel explained that "credibility of witnesses . . . played a big role in our decision[.]" He said that Lawrence Sherrill came across "rather smart aleck," that he "smiled a lot and joked," and that he "came across, always, as a jokester." Counsel said he was "sure" that he had asked Lawrence Sherrill if the bulk of the cocaine was his, and that Sherrill's response was consistent with their defense, that the petitioner had come to the trailer only to purchase drugs. He said that although it was possible that the jury would have found Ellis and Sherrill credible, he thought it was a "very, very slight possibility," and that, in presenting numbers of witnesses, "sometimes less is better than more." He disagreed that the petitioner had asked that Lawrence Sherrill be called as a witness, saying that of those persons whom the petitioner wanted to testify, only Danny Ray Ellis was not called.

A letter which the petitioner had sent to counsel, and which was dated April 4, 1998, was made an exhibit to counsel's testimony. In the letter, the petitioner had set out whom he wanted to testify and what he expected the testimony of each to be:

> LaVeta King      This is my ex-girlfriend whose residence it was and who sent for me to come and pick up my clothes. I feel she can tell you whose drugs was found.

> Kenneth Sherrill      This is who said that the firearm that was found belonged to him.

> Danny Ray Ellis      This is who my ex-girlfriend sent to pick me up from my resident [sic] in McKenzie [and] I believe he knows to whom the drugs belong also.

> Arron [sic] Dudley      This is who I live with and he can confirm that I was at home all that day until Danny pick [sic] me up shortly before the raid.

As for presenting Aaron Dudley, whose trial testimony the petitioner criticized at the post-conviction hearing, trial counsel said, apparently, that he had talked "briefly" with Dudley and interviewed him on the telephone. He did not believe that he was aware of Dudley's felony cocaine conviction. Counsel agreed that it might have been better to call the petitioner's aunt as a witness, rather than his uncle, but they had never talked about calling the aunt, and counsel had "called the witnesses that [he and the petitioner] had discussed."

Counsel explained why Kenneth Sherrill had been presented as a witness:

> The main reason was that Mr. Sherrill, at the time, he was present, ah, he could speak well. He had a good command of the language. He was there; he knew, and told me that he knew, that he

never saw Mr. Teague with any cocaine. That was a large amount of cocaine. Ah, someone present at the home, ah, surely would have noticed, or we would have liked the jury to think, that they would have noticed someone bringing that in the house.

Also, at the time, well prior to that, there was also a gun charge that was subsequently dropped, before the trial. And Mr. Sherrill had told me that he knew that that wasn't Mr. Teague's gun. And so, he had ah, facts that he knew, and he was present. And he presented himself well, and we just needed a good witness.

Regarding a possible plea agreement by the petitioner to the charges, counsel said that he had "wanted to negotiate," but that "Mr. Teague wouldn't negotiate, because he said he was on probation and would be violated if he pled guilty. So basically ah, entering into a plea, in his mind was out of the question." Counsel said he believed that a plea agreement for the petitioner "would have been very similar" as that offered to the other defendants, but that he had not discussed it "for a great length of time with the DA" because the petitioner "was adamant that he couldn't plead, because he was on probation."

Trial counsel said that he had not filed a motion to suppress the evidence seized at the trailer because, since the petitioner did not live there, he did not have standing to raise such a motion. He said that he was "sure" he had told the petitioner that he did not know the identity of the informant for the search warrant.

Following the hearing on the petition for post-conviction relief, the court entered written findings of fact and conclusions of law:

The petitioner seeks to set aside his conviction for possession of cocaine in excess of .5 grams with the intent to sell upon the grounds of ineffective assistance of counsel. This court finds no grounds for relief.

Following sentencing an appeal was pursued upon the sole issue of sufficiency of the evidence. The conviction was affirmed on February 26, 1999.[2] Petitioner now raises the same issue, but couches it in such language as to charge trial counsel with ineffectiveness. Specifically, petitioner contends that the verdict in his case "could" have been different had trial counsel called certain witnesses and, perhaps, not presented another witness who did testify at the trial. Additionally, he questions a failure to contest the search of the premises that gave rise to his charges. As to the latter, the petitioner

---

[2]No. 02C01-9806-CC-00187; p.t.a. den. 7/12/99.

clearly establishes that he had no standing to challenge the questioned search.

Petitioner contends that two co-defendants, Danny Ray Ellis and Lawrence David Sherrill, if called, would have testified that he merely possessed controlled substances, but did not possess them with the intention of sale. The decision not to call these witnesses at trial was a joint decision made by counsel and the petitioner following proper discussion. Assuming that these witnesses would have testified at the trial as they did in this proceeding, the decision not to call them was and remains a wise decision. Quite simply stated, these witnesses are unbelievable under any circumstances, even if one chooses to ignore their criminal history. Lastly, counsel is charged with ineffectiveness for having called one Aaron Dudley, Sr. because of his criminal history and the manner in which he presented his testimony. This witness was called in an attempt to establish petitioner's residence, an important facet of his defense theory. The witness testified as anticipated, but also revealed that the petitioner was on parole for a prior felony conviction. As with the witnesses, Ellis and Sherrill, the calling of the witness Dudley was agreed upon only after discussion with the petitioner. It is impossible to weigh the effect of this witness's testimony on the jury; however, the overall significance of his testimony pales considerably in view of the other overwhelming evidence of guilt produced by the state.

A number of other grounds are raised in the amended petition; however, no evidence has [been] brought forward addressing those allegations. More importantly, there is nothing to be found anywhere in the record that would remotely suggest that trial counsel's performance was deficient in any manner.

We will now consider the specific claims raised on appeal by the petitioner.

### I. Failure to Prepare Trial Witness Aaron Dudley

The petitioner argues that his trial counsel was ineffective in presenting witness Aaron Dudley at the trial. Dudley was called as a defense witness to testify that the petitioner lived with him, rather than at the residence where the petitioner was arrested. The specific exchange, occurring during cross-examination, between Dudley and the prosecutor of which the petitioner complains is as follows:

> Q.     Mr. Dudley, how long are you alleging that Mr. Teague lived with you?

A. From the time they released him from prison.

Q. When was that?

A. Oh, September, August. I'm not for sure what date when they released him.

Q. And how long did he live with you?

A. Up until he got arrested.

Q. Would that be October 16th?

A. I guess.

. . . .

Q. Did he have a room by himself over there?

A. Yes.

Q. Okay.

A. His parole officer come in and inspected the house before he even let him out.

Q. Okay; who was that?

A. Treet or Tree, or some – Darrell Treet or Darrell Tree.

Q. Inspected your house?

A. Yes.

Q. Now, Mr. Dudley, do you have a criminal record?

A. Yes, I do.

Q. What is your criminal record?

A. For the sale of crack cocaine to an undercover police officer.

Q. Okay; you pled guilty to that, did you not?

-11-

A.     Yes, I did.

Q.     Do you remember the year you pled guilty to it?

A.     '94 or '95, somewhere.

Q.     Would it be November the 21st, –

A.     I'm not – I don't–

Q.     – 1994?

A.     I didn't plead guilty until January the 9th or 11th, somewhere there.  I pleaded guilty in front of this man here [indicating].

Q.     But you did plead guilty to the sale of crack cocaine?

A.     Yes, I did.

The petitioner argues that his trial counsel was ineffective in not filing a motion in limine to prevent the jury from learning about his "prior bad acts, arrest record, convictions, and prison sentences, etc."  Additionally, as to Aaron Dudley, the petitioner claims that his trial counsel was ineffective because Dudley "admitted to a prior felony conviction of the same charge as defendant's present charge, occurring in the same court, and before the same judge."  The petitioner argues that had his trial counsel "properly interviewed" Dudley, he should have considered not calling him, but presenting the same information through another witness, such as Mrs. Dudley, who was available to testify but did not have a felony conviction, as did her husband.  The petitioner argues that, had Mr. Dudley been properly prepared as a witness, he would not have testified as he did.  First, as to the complaint that trial counsel was ineffective for not filing a motion in limine to prevent the jury from learning from Aaron Dudley of the petitioner's convictions, the jury heard specifically of the petitioner's two convictions when he was cross-examined at the trial.  We are unable to envision how the petitioner was harmed by Mr. Dudley's passing reference to the petitioner's criminal past when the petitioner was subject to cross-examination about these convictions when he testified.

We note first that the petitioner had asked, in his letter to trial counsel, that Aaron Dudley be called as a witness.  Further, we note that the specific responses about which the petitioner claims were volunteered information which were only marginally responsive, if at all, to the question.  Legal lore abounds with stories of garrulous witnesses, as it appears that Mr. Dudley was.  Since the petitioner, we presume, was well familiar with his uncle, and asked in writing that he be called as a witness to establish the petitioner's place of residence, we cannot fault defense counsel for complying with his client's request.  Additionally, we cannot presume, as petitioner argues, that trial defense counsel could have curbed Mr. Dudley's tongue simply by spending more time preparing his testimony.  As part of his claim, the petitioner argues that his aunt, rather than his uncle, should have been called to testify as to his place of residence at the time of his arrest.  However, his aunt

did not testify at the post-conviction hearing. We cannot presume, as the petitioner asks, that her testimony would have been more favorable than that of his uncle. As to complaints about Aaron Dudley's testimony, the post-conviction court observed that the petitioner, himself, agreed that Dudley should be called as a witness and that the "significance" of his testimony "pales considerably" in view of the other evidence. We agree with this conclusion.

## II. Failing to Interview and Call Material Eyewitnesses

The petitioner argues that the testimony of "[Danny Ray] Ellis and [Lawrence] Sherrill is very probative of the issues at defendant's trial." However, for purposes of our review, the question is whether trial counsel was ineffective for not calling these witnesses to testify. Counsel testified that both had poor demeanor, especially Lawrence Sherrill, as well as prior convictions. Counsel further testified that the petitioner agreed that neither should testify at the trial and was, in fact, the final voice on this matter. We note that Lawrence Sherrill was not on the list of witnesses that the petitioner sent to trial counsel, although Ellis was listed. The post-conviction court, before which both testified, found that "these witnesses are unbelievable under any circumstances." Based even upon our review of the transcript of the post-conviction hearing, it is apparent that the testimony of these witnesses would have presented additional problems for trial defense counsel in view of their testimony, which appeared to be less than forthcoming and appeared to create inconsistences among the witnesses. Accordingly, we conclude that the record supports the conclusion of the court that trial counsel was not ineffective.

## III, VI-VIII. Failure to Advise Petitioner Regarding Possible Plea of Guilty, Guilty Pleas of Codefendants, and Pretrial Stipulations

The petitioner lumps together several claims. He claims that his trial counsel did not advise him of the effect of "agreeing to stipulations as to [the] drug amount," of "potential charges/convictions/sentences" so that he could evaluate the "benefits of [a] negotiated guilty plea compared to [the] hazards" of a trial, and of the "legal ramifications and trial impact of co-defendant status, guilty pleas and sentences."

## A. Stipulations

The petitioner's complaint regarding stipulations is not entirely clear. At the post-conviction hearing, the petitioner testified, apparently regarding the stipulations:

> [Trial counsel] advised me to testify and own up to having it, the one tenth of a gram, in my possession, and that I would do, that's what, that I would be responsible for. And in trial, in fact in trial, when I went to trial and found guilty of – an appeal, it would, an appeal court, that they would see it as being, having possession of owning the drugs, one tenth.

-13-

The opinion of this court on direct appeal, affirming the conviction of the petitioner, states that "[t]he officer removed a rock of crack cocaine weighing approximately one-tenth of a gram from the hand of the appellant and also removed money from his pockets." Teague, 1999 Tenn. Crim. App. LEXIS 174, at *3. However, in his petition for post-conviction relief, the petitioner apparently denied that he had cocaine in his hand as the officer entered the room, saying that, had Lawrence Sherrill testified, "[h]is testimony would have been that this petitioner did not have anything in his hands when the officers arrived. The same for the other requested witness, co-defendnat [sic] Danny R. Ellis." We note that, at the trial, Tennessee Bureau of Investigation special agent forensic scientist Sandra Jean Romanek testified, *inter alia*, that the smaller of the two cocaine samples admitted into evidence weighed one-tenth of one gram.

Given this testimony, we do not understand the petitioner's complaints regarding stipulations. If he is claiming that his attorney stipulated as to the weight of the smaller sample, that assertion does not appear to be true. If his claim is that his attorney was ineffective for convincing him to "stipulate" that he had cocaine in his hand as the officers entered the room, we believe that the petitioner has an unrealistic view of his trial options. Since the officer testified at the trial that the petitioner had a rock of crack cocaine in his hand when officers entered the room, it appears that admitting this was the case, but that he was the purchaser and not the seller of the cocaine, was one of the petitioner's least inculpatory options.

In determining whether defense counsel was ineffective, the test is not whether another lawyer "might" have tried another defense which "might" have been successful. Rather, we evaluate the objected-to conduct by ascertaining whether any competent counsel would have done as defense counsel did. See Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[T]o show that the [lawyer's] conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (noting that conduct of counsel is unreasonable only upon a showing "that no competent counsel would have made such a choice").

We conclude, as was implicit in the findings of the post-conviction court, that the petitioner has failed to establish that trial counsel was ineffective in agreeing to any "stipulations."

## B. Advice as to Charges/Convictions/Sentences

In this regard, the petitioner testified at the post-conviction hearing about the circumstances under which he would have entered a plea of guilty:

> Q.     If [trial counsel] had told you you were going to get 10 years and 10 thousand dollars, or you could have taken the guilty pleas that the other gentlemen had taken, would you have made a different decision about going to trial?
>
> A.     Yes, sir.

-14-

> Q.    What did [trial counsel] tell you that your chances were on going to trial?
>
> A.    He said I had, that I stood a good chance of being charged.
>
> Q.    And then if you had an appeal, that you'd probably . . .
>
> A.    It would be on the attorney.

This testimony contrasts with that of trial defense counsel who said that the petitioner "wouldn't negotiate" because a guilty plea would result in his probation for a previous conviction being revoked. We note that he was cross-examined at trial about a 1996 conviction for aggravated burglary and a 1991 conviction for theft of property, either or both of which could have been the basis for his being on probation at the time of the instant offense.

The petitioner also argues that trial counsel testified that "he did not know what plea agreements Ellis and Sherrill entered" and "did not know what plea agreement had been offered to defendant." The record does not support this assertion. Trial defense counsel testified at the post-conviction hearing that he did not "recall" what sentences Ellis and Sherrill had received. His testimony was only that, at the time of the hearing, he did not know what their sentences were, not that he had never known. As for negotiating a plea agreement for the petitioner, trial defense counsel said that he "didn't get very far, because Mr. Teague wouldn't negotiate" and that the petitioner was "adamant that he couldn't plead, because he was on probation." Implicit in the post-conviction court's findings was that it accredited trial defense counsel's testimony that the petitioner could and would not consider a plea of guilty because it would result in the revocation of a probationary sentence. We cannot conclude that the post-conviction court erred in this regard.

Based upon the record on appeal, which includes the transcript from the petitioner's trial, it is not at all clear that additional witnesses would have advanced his defense. Rather, discrepancies and additional testimony could have exacerbated the petitioner's problems. Officers testified that they watched the trailer for four hours prior to executing the search warrant, and no vehicles came or went during this period. Thus, although the petitioner claims that he was only purchasing cocaine, he had devoted at least four hours to the transaction. However, LaVeta King testified that the petitioner had been at her house for only "five or ten minutes" before officers executed the search warrant. She said she did not know how he got to her house, although Danny Ray Ellis testified that he had driven the petitioner there. When asked what the petitioner, Danny Ray Ellis, and Lawrence Sherrill were doing in her bedroom when officers arrived, Ms. King said, "I don't know." She said that she "would feel like that was being nosy" to see what they were doing in her bedroom. She said that she had pled guilty to a charge resulting from the incident but did not recall what the charge was.

We cannot conclude that no competent attorney would have decided that the charges could best be defended by proceeding as did the trial attorney in this matter. Thus, the record on appeal supports the findings and conclusion of the post-conviction court.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court dismissing the petition.

_____

ALAN E. GLENN, JUDGE